FILED

2005 Feb-15 PM 02:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| VICTOR FAIR and GLENDA TOWNSEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | CV-02-HS-2938-S |
| | ) | |
| NATIONWIDE MUTUAL FIRE INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION ON DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

This is a civil action that was originally filed on October 28, 2002, in the Circuit Court of Jefferson County, Alabama, and was removed to the United States District Court for the Northern District of Alabama on December 3, 2002. Removal was based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441, 1446. The complaint was filed by Plaintiffs Victor Fair and Glenda Townsend against Defendant Nationwide Mutual Fire Insurance Company. The complaint alleged that the Defendant breached its contract with Plaintiffs by refusing to indemnify and defend Plaintiffs, and that Defendant, in bad faith, failed and refused to defend Plaintiffs and denied coverage without an adequate, debatable, or lawful reason.

Defendant Nationwide Mutual Fire Insurance Company filed a Motion for Summary Judgment on January 30, 2004, on the grounds that there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

# I.  UNDISPUTED FACTS

Victor Fair ("Fair") is the named insured on a Golden Blanket Homeowners Policy issued by Nationwide Mutual Fire Insurance Company, with a policy number 77HO800-074 ("policy"). (*See Townsend Depo*. at 51.)  Mr. Fair executed an application for the policy on November 30, 2000. Glenda Townsend ("Townsend"), who lives with Mr. Fair but is not married to him,  is not on the application and did not execute one herself.  (*See Id.* at 23-24.)  The policy defined "insured" as "...you and the following who live in your household: a. relatives, b. any other person under age 21 and in the care of you or your relatives."  (*See Nationwide Policy issued to Victor Fair*.)  "You" is defined as "the named insured shown in the policy, and the spouse who lives in the same household." (*See Id.*)  It is undisputed that Mr. Fair and Ms. Townsend are not married, have never been married, and never considered themselves married.  (*See Townsend Depo*. at 35.)  It is also undisputed that Ms. Townsend is not a relative of Mr. Fair.  (*See Id.*)  Furthermore, Ms. Townsend is twenty-six years old, and therefore is not subject to the "under 21" language in the "insured" definition.  (*See Nationwide Policy issued to Victor Fair*.)

On October 14, 2001, Porscha Russell, a minor, (daughter of Pamela and Joel Russell) was bitten by a dog owned by Mr. Fair and Ms. Townsend.  (*See Complaint- Victor Fair and Glenda Townsend v. Nationwide Insurance Company*, at par. 4.)  The bite occurred in the driveway of property owned by Mr. Fair, located at 113 Westchester Drive, Birmingham, AL 35215.  (*See Id.*) This property was the residence of both Mr. Fair and Ms. Townsend at all times pertinent to this lawsuit. (*See Fair Depo*. at  83.)  Immediately after the dog bite occurred  Mr. Fair's daughter called him on the telephone to notify him of the incident.  (*See Id.* at 49.)  Mr. Fair returned home from Montevallo, Alabama after receiving the call.  (*See Id.*)  Upon arriving home, Mr. Fair went across

the street to the Russell house to check on Porscha.  (*See Id.*)  The Russells invited Mr. Fair into the home and explained that they had brought Porscha to the hospital.  (*See* Id. at 53.)   Mr. Fair observed a band-aid on the back of one of Porscha's legs.  (*See Recorded interview statement of Mr. Fair, May 2002*, at 84.)  Mr. Russell told Mr. Fair that Porscha was okay, that it wasn't anything serious, and that it probably scared her.  (*See Fair Depo.* at 52-53.)   Porscha told Mr. Fair that she was okay.  (*See Id.* at 54.)  Mr. Fair asked Mr. Russell if he could do anything and Mr. Russell responded that Mr. Fair could pay the co-payment for the hospital visit.  (*See Id.* at 56.)  Mr. Fair agreed to do so and gave Mr. Russell between twenty-five and thirty-five dollars.  (*See Id.)*  Later that evening, Ms. Townsend went over to the Russell home to check on Porscha. Mr. Russell told Ms. Townsend that Porscha was okay and that she was more scared than anything.  (*See Fair Depo*. at 52-53, 56.)  Ms. Townsend observed two band-aids on one of Porscha's legs.  (*See Townsend Depo*. at 70-72.)

On January 17, 2002, the Russells filed a lawsuit in the Circuit Court of Jefferson County, Alabama, against Mr. Fair and Ms. Townsend.  (See *Complaint- Pamela and Joel Russell, as parents and next friends of Porscha Russell, a minor v. Victor Fair, an individual and Glenda Townsend, an individual*, case number CV 02-0376).

The Russells' first attempt to serve their complaint on Ms. Townsend was by certified mail to an individual named on the summons as "Gloria Townsend."  (*See Certified  mail return card,* dated January 26, 2002.)  The certified mail card attached to the envelope containing the summons and complaint was addressed to one Gloria Townsend, at the address of the residence of  Glenda Townsend and Victor Fair.  (*See Id.*)  The signature on the certified mail card is one of Mr. Victor Fair, dated January 26, 2002.  (*See Fair Depo*. at  83-84.)  Mr. Fair acknowledged that the signature

was his, however, he says that he does not remember signing the receipt.  (*See Id.* at 83, 86, 88.)

Mr. Fair also does not remember giving the aforementioned envelope to Ms. Townsend.  (*See Id.*)

Ms. Townsend stated that the mail in their home is not kept in one specific place, but instead it is

found "everywhere"in the house.  Therefore,  Ms. Townsend explained,  she didn't see the certified

mail receipt until Mr. Fair's deposition.  (*See Townsend Depo.* at 113, 117.)

On February 4, 2002, the Russells made their second attempt at serving Ms. Townsend a

summons and complaint, notifying her of the lawsuit.  (*See Certified mail return card,* dated

February 4, 2002.)  Again the Russells sent the summons and complaint certified mail, however, this

time the envelope was addressed to Glenda Townsend at the above mentioned address.  (*See Id.*)

The signature on the second certified mail receipt card is one of Victoria Brown.  (*See Id.*)  Victoria

Brown is Victor Fair's daughter  who was sixteen at the time she signed for the mail.  (*See Townsend

Depo*. at 116.)  Ms. Townsend confirmed Victoria Brown's signature but says that she does not recall

being told by Ms. Brown that she received a lawsuit by certified mail that day.  (*See Id.*)  Mr. Fair

also stated that Ms. Brown failed to notify Mr. Fair about the certified mail card.  (*See Fair Depo*.

at 90.)

The Russells also attempted to send Victor Fair a copy of the summons and complaint by

certified mail on both January 25, 2002 and January 31, 2002.  (*See Certified mail return card

addressed to Victor Fair*.)  However, the certified mail card was returned as "unclaimed" on

February 4, 2002.  (*See Id.*)  Mr. Fair acknowledged that a certified mail card correctly listed his

name and address, however, he stated that he does not remember receiving any notice that attempts

had been made to deliver a certified mail package and that it was waiting to be picked up.  (*See Fair

Depo*. at 97-99.)

4

The Russells made yet another attempt to serve Mr. Fair after the certified mail envelope containing the original summons and complaint had been returned unclaimed.  The Russells filed an alias summons directed to Mr. Fair and obtained a service by process server at the above mentioned address on April 17, 2002.  (*See Alias Summons for Victor in the case of Russell v. Fair et al.*, CV 02-376.)  On April 18, 2002, Victor Fair was properly served the summons and complaint. (*See Jefferson County Circuit Court Order for Service and Return by Special Process Server to Victor Fair*.)

At some point prior to being served with the *Russell* lawsuit but after service had been perfected on Ms. Townsend, Mr. Fair met with his Nationwide Insurance agent, David Rosetta, to discuss purchasing new automobile insurance.  (*See Fair Depo*. at 65, 117.)  It is undisputed that, at this meeting, Mr. Fair did not mention the dog bite incident or the *Russell* lawsuit.  (*See Id.* at 119-120.)

After being served with the *Russell* lawsuit, Mr. Fair called his attorney, Marcus Jones.  (*See Id.* at 64.)  Mr. Jones advised Mr. Fair to take the *Russell* lawsuit to his insurance company.  (*See Id.* at 65.)  Nationwide Insurance received notice of Fair's claim on April 19, 2002, over six months after the date of the dog bite (October 14, 2001).  (See *Downs Depo*. at 32.)  When Mr. Fair arrived at Nationwide, the receptionist dialed a number to report Fair's claim.(*See Fair Depo*. at p. 65.) Veronica Patterson initially received the claim and responded with a phone call to discuss the *Russell* lawsuit with Mr. Fair.  (*See Downs Depo*. at 42.)

Once the case was received, Jeffrey Downs ("Downs"), a master claims representative with Nationwide, was in charge of the issue of coverage.  (*See Id.*)  Mr. McCullah, supervisor to Downs, told Downs to open a coverage file and handle the coverage aspect of the claim.  (*See Id.* at 44.)

On April 25, 2002, Nationwide claims representative Downs contacted Mr. Rosetta, Mr. Fair's insurance agent.  (*See  Id.* at 45.)  Downs confirmed that Mr. Fair had not told Mr. Rosetta about the dog bite incident until April 19, 2002.  (*See Id.*)

On April 29, 2002 Nationwide sent a Reservation of Rights letter to Mr. Fair acknowledging receipt of his claim.  (*See Letter to Victor Fair from Nationwide*, dated April 29, 2002.)  The letter also notified Fair of potential coverage issues concerning Mr. Fair's late notice to Nationwide of the dog bite incident.  (*See Id.*)  Nationwide's letter provided the applicable policy language triggered by Mr. Fair's late notice:  (*See Id.*)

> Under the Duties After Loss Section, "In case of an accident or **occurrence**, [you] will perform the following duties that apply.  You will cooperate with us in seeing that these duties are performed :
> 2. Give (notice) to us or our agent as soon as practicable setting forth:
> > 1. Identity of the policy and **insured.**
> > 2. The time, place and facts of the accident of **occurrence**.
> > 3. Names and addresses of the claimants and witnesses.
> 3. Forward to us every document relating to the accident or occurrence.
> 4. At our request, assist in:
> > 1. Making settlement.
> > 2. Enforcing a right of contribution or indemnity against a person or entity who may be liable to an insured.
> > 3. Conducting suits and attending hearings and trials.
> > 4. Giving evidence and asking witnesses to attend."(*See  Id.*  All emphases original).

Nationwide sent the defense of the *Russell* lawsuit to the law firm of Crosslin, Slaten, & O'Conner, in Montgomery, Alabama.  (*See Downs Depo*. at pp. 42.)  On or about April 30, 2002, Ed Hixon of Crosslin, Slaten, & O'Conner was hired to draft and file an Answer in response to the *Russell* lawsuit on behalf of Mr. Fair.  Mr. Hixon filed an Answer on behalf of both Mr. Fair and Ms. Townsend.  (*See Answer of Defendant Glenda Townsend Russell v. Fair, et al.*, *In the Circuit Court of Jefferson County*; Civil Action No.: CV 02-276 filed May 6, 2002.)

6

On May 1, 2002, Veronica Patterson, from Nationwide Insurance, took a recorded interview statement from Mr. Fair. (*See Fair Depo.* at pp. 79-82.) Nationwide retained attorney Korie Clement as counsel to review the coverage issues raised in Fair's claim. Clement provided a coverage opinion to Nationwide stating that, "based on the case law, and the policy language concerning the duties after loss, Fair has failed to present a reasonable basis for his delay in notifying Nationwide of the occurrence and the suit...Nationwide is therefore relieved of its duty to defend and indemnify the insured for any claims arising from the October 14, 2001, accident." (*See Excerpt from "Coverage Opinion" written by attorney Korie Clement*.)

On or about June 6, 2002, Nationwide sent a letter to Mr. Fair via certified mail, for which return receipt was acknowledged by Mr. Fair on June 11, 2002. (*See Correspondence from Jeffrey Downs to Victor Fair.*) The letter informed Mr. Fair that Nationwide had concluded its investigation and made a determination that because of the aforementioned policy regarding notice, Nationwide would be unable to provide Mr. Fair with a defense or indemnification for the claims made against him in the *Russell* lawsuit. (*See Id*.)

It is undisputed that Mr. Fair held an insurance policy which was in full effect on the day the dog bite occurred. (*See Downs Depo.* at 25-26.)

On October 28, 2002, Mr. Fair and Ms. Townsend filed suit against Nationwide. (*See Complaint-Victor Fair and Glenda Townsend v. Nationwide Insurance Company*, originally filed prior to removal in the Circuit Court of Jefferson County, Alabama, case number CV 02-6539.) The first count alleged that Nationwide breached its contract with both Mr. Fair and Ms. Townsend by failing and refusing to defend them in the *Russell* lawsuit. (*See Id*. at par. 11.) The second count alleged bad faith on the part of Nationwide for failing and refusing to defend them as well as for

denying them coverage without an adequate, debatable, or lawful reason. (*Id*. at par. 13.)  They also

claimed that Nationwide failed to investigate the facts and circumstances of Fair's claim to determine

its merit. (*See Id*.)  Plaintiffs contend that an assumption was made that Ms. Townsend was served

with the lawsuit in February 2002, and that Mr. Fair was put on notice of being sued at that time.

(*See Id*. at p. 37.)  Finally, Plaintiffs submit that Nationwide cannot articulate any event that occurred

that prejudiced its ability to handle the claim made by the Russells. (*See Downs Depo*. at 40-41.)

## II. STANDARD OF REVIEW

In determining whether summary judgment is appropriate, the Court must view all evidence

and factual inferences in the light most favorable to the nonmoving party.  Summary judgment is

proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to

a judgment as a matter of law." Fed.R.Civ.P.  56(c).  However, "the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510,

91 L.Ed.2d 202 (1986).  Only factual disputes that are material under the substantive law governing

the case will preclude entry of summary judgment. *Id.*  Once the part seeking summary judgment

informs the court of the basis for its motion, the burden shifts to the non-moving party to

demonstrate why summary judgment would be inappropriate." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

Under Alabama law, a liability insurance company is relieved of its duty to defend and

indemnify an insured when the insured fails to notify the liability insurer, as required by the

insurance policy, of an incident in which the insured's dog bit another person.

It is undisputed that Mr. Fair had at the time of the dog bite incident an insurance contract with Nationwide that was in full force and effect.  However, what is in question is whether or not Mr. Fair gave timely notice to the insurance company of the actual incident.  According to his insurance contract, Mr. Fair was required to give notice "as soon as practicable."  The court in *USF&G v. Baldwin Co. Homebuilders Assoc., Inc.*, 770 So.2d 72, 75 (Ala. 2000) interpreted "as soon as practicable" to mean that the insured "must give notice within a reasonable time under all of the circumstances."  Furthermore, under Alabama law, the only factors to be considered by the court in determining the reasonableness of a delay in giving notice to an insurer are (1) the length of the delay and (2) the existence of a reasonable excuse for the delay.  *Southern Guaranty Insurance Co. v. Thomas, 334 So.2d 879, 883 (Ala.1976); see also United States Fidel. & Guar. Co. v. Baldwin County Home Builders Ass'n*, 770 So.2d 72, 75-76(Ala. 2000).  Mr. Fair waited approximately six months after the dog bite occurred and approximately two months after service on Ms. Townsend had been perfected before notifying Nationwide of the incident. Under Alabama law, a delay of this length warrants summary judgment in favor of the insurance company, so long as the insured provides no "reasonable excuse or the existence of circumstances which would justify a protracted delay." *Southern Guaranty Insurance Co. v. Thomas,* 334 So.2d 879, 882-883 (Ala.1976) (a six month delay entitled the insurer to summary judgment).  Given that this length of delay has been found unreasonable in Alabama, unless the delay is excused,  it is necessary for the Court to examine Fair's reason for the delay.

         In *Acceptance Insurance Company v. Shafner,* the court held that the existence of a question as to whether an individual, bitten by the insured's dog, would pursue a cause of action against the insured did not support a reasonable belief on the part of the insured that he would not be sued and

did not provide  reasonable excuse for the insured's delay in notifying the liability insurer of the incident. *Shafner*, 651 F. Supp. 776 (Ala. 1986).   Mr. Shafner, the insured, argued that there was question as to whether suit would be filed.  However, Schafner received notice that the victim was considering legal action.  The court found, as a matter of law, that a question as to whether the victim would pursue a cause of action cannot support a reasonable belief on the part of the insured that he would not be sued. *Id.* at 777.

In the instant case, the Court must determine whether Mr. Fair's delay is unreasonable as a matter of law.  Mr. Fair stated that the reason he did not report the incident was, "I didn't, not at that time, I didn't think, you know because after that happened, I didn't think they was serious like that because she didn't keep her in the hospital or anything.  I didn't know, you know, they was trying to sue or anything like that, that is why, you know..."  Mr. Fair provided no other excuse for such protracted delay other than that he didn't think it would "lead up to anything like this." Essentially, Mr. Fair stated that he didn't think the Russell family would pursue legal action against him.  As evidenced by the certified mail return cards submitted by both Plaintiff and Defendant, one signed by Mr. Fair and the other by his daughter, Mr. Fair had notice of the Russell lawsuit at least two months prior to the date on which he gave Nationwide notice of the incident.  Additionally, Mr. Fair has offered testimony stating that he was personally notified of the dog bite incident just a few minutes after it occurred,  he sped home immediately upon being notified, he spoke to the parents of the dog bite victim, and he paid a hospital co-payment for the care given to the victim after the bite.  Therefore, it is reasonable to conclude that Mr. Fair had knowledge of the occurrence and was put on notice of the Russell lawsuit.  Therefore, his delay was unreasonable as a matter of law.

The Alabama Supreme Court has long held that compliance with contractual notice

requirements are a condition precedent to an insured's recovery under an insurance policy. *Pharr v. Continental Cas. Co.*, 429 So.2d 1018 (Ala. 1983). Given all of the facts, it is clear (and admitted) that Mr. Fair was aware of the incident and did not notify his insurance company, a condition precedent under Alabama law to Mr. Fair's right to receive the benefits of the contract. *Id.* If the facts are undisputed and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law. *U.S. Fidelity and Guar. Co. V. Baldwin County Home Builders Ass'n, Inc.*, 770 So.2d 72 (Ala. 2000). Here, all of the following are undisputed: the signature on the certified mail return card is that of Mr. Fair, Mr. Fair knew of the occurrence of the dog bite the day that it occurred, Mr. Fair met with a Nationwide agent after the dog bite occurrence and still did not divulge the information, and the terms of the insurance contract. Mr. Fair as well as Mr. Fair's daughter, on separate occasions, accepted and signed for certified mail containing the original summons and complaint. In the event that notice is served by certified mail, return of the receipt properly signed is prima facie evidence of service. *Elite Bail Bonding Co., Inc. v. State*, 827 So.2d 823 (Ala. Civ. App., 2002). This Court does not intend to challenge legal and fully perfected service of process as a form of proper notice of a lawsuit.

## IV. CONCLUSION

A. Breach of Contract

The Court concludes that Mr. Fair was put on notice of the Russell lawsuit and that the argument that he didn't anticipate the lawsuit fails as a matter of law. The fact that Mr. Fair failed to notify his insurance company is a breach of the condition precedent set forth in his insurance contract. Mr. Fair was unable to articulate a reasonable justification for such failure, therefore, Mr. Fair's protracted delay was unreasonable as a matter of law. Consequently, Mr. Fair failed to perform

on the contract and  Nationwide is therefore relieved of its duty to defend and indemnify Mr. Fair.

B. Bad Faith

In order for an insured to succeed in a tort claim of bad faith refusal of an insurance company to defend and indemnify the insured, the insured must provide sufficient evidence to prevail as a matter of law on a breach of contract claim against the insurance company.  *See National Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).  For the reasons stated above, this court has determined that Nationwide is entitled to summary judgment as to Mr. Fair's contract claim.  In other words, Nationwide was entitled to refuse to indemnify and defend Mr. Fair.  Such refusal does not amount to a breach of contract on the part of Nationwide.  In light of the fact that Nationwide did not breach its contract, Mr. Fair's claim of bad faith also fails as a matter of law.

For the reasons set forth above, the Motion for Summary Judgment will be GRANTED.  A separate Order will be entered.

Done this 15th day of February, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

_____
_____
_____

12